Matter of Saintval v AMN Healthcare (2018 NY Slip Op 06841)





Matter of Saintval v AMN Healthcare


2018 NY Slip Op 06841


Decided on October 11, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 11, 2018

525777

[*1]In the Matter of the Claim of DIEULA SAINTVAL, Appellant,
v
AMN HEALTHCARE et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: September 11, 2018

Before: Garry, P.J., Clark, Mulvey, Rumsey and Pritzker, JJ.


John F. Clennan, Ronkonkoma, for appellant.
Jones Jones LLC, New York City (David S. Secemski of counsel), for AMN Healthcare and another, respondents.



MEMORANDUM AND ORDER
Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed February 6, 2017, which ruled, among other things, that claimant sustained a 45% loss of wage-earning capacity.
In April 2012, claimant, a surgical technologist, sustained work-related injuries when she slipped in a puddle of water and fell while working in an operating room. Claimant's subsequent claim for workers' compensation benefits was ultimately established for injuries to her neck, back, right shoulder, right wrist and left knee. Claimant was awarded benefits for a temporary partial disability, and further proceedings were conducted to ascertain the permanency of her injuries and the extent to which they impacted her functional ability and, concomitantly, her loss of wage-earning capacity. Following said proceedings, a Workers' Compensation Law Judge (hereinafter WCLJ) classified claimant with a nonschedule permanent partial disability due to the conditions of her knee and shoulder as well as her cervical spine (soft tissue) condition of B severity and lumbar spine (soft tissue) condition of B severity. The WCLJ further found that claimant could perform sedentary work and assessed her loss of wage-earning capacity at 66%. The employer and its workers' compensation carrier (hereinafter collectively referred to as the employer) appealed to the Workers' Compensation Board to challenge the WCLJ's assessment of claimant's loss of wage-earning capacity,[FN1] and the Board modified the WCLJ's decision, [*2]determining, among other things, that claimant had a 45% loss of wage-earning capacity. Claimant appeals.[FN2]
Claimant contends that the Board's determination to reduce her loss of wage-earning capacity from 66% to 45% was not supported by substantial evidence. We disagree and affirm. Chapter 9 of the 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity sets forth the manner for determining the loss of wage-earning capacity for a claimant with a nonschedule permanent partial disability (see Matter of Bloomingdale v Reale Constr. Co. Inc., 161 AD3d 1406, 1408 [2018]; Matter of King v Riccelli Enters., 156 AD3d 1095, 1098 [2017]). Such a determination "is based on three types of input, namely, medical impairment, functional ability/loss and non-medical vocational factors" (Matter of Golovashchenko v Asar Intl. Corp., 153 AD3d 1475, 1476 [2017]; see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44 [2012]). "The first two inputs are medical in nature, while the third is non-medical and concerns matters such as [the] claimant's education, skill, age and literacy" (Matter of Bloomingdale v Reale Constr. Co. Inc., 161 AD3d at 1408 [internal quotation marks and citations omitted]; see Matter of King v Riccelli Enters., 156 AD3d at 1098; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity at 44-46 [2012]).
"The Board is vested with the authority to resolve conflicting medical opinions," as it did here (Matter of Bloomingdale v Reale Constr. Co. Inc., 161 AD3d at 1409 [internal quotation marks and citations omitted]). The Board expressly credited the March 2016 report of Jerrold Gorski, the physician who conducted an independent medical examination of claimant and reviewed her comprehensive medical history. As to the Board's findings relative to claimant's medical impairments and functional limitations, which claimant does not challenge on appeal, Gorski reported that claimant has a slight limitation of movement in her right shoulder resulting in a 10% schedule loss of use in addition to a 7.5% schedule loss of use in her left knee notwithstanding having full mobility in that knee [FN3]. Regarding claimant's nonschedule impairments in her lower back, Gorski reported that she has "some radicular-type symptoms of a very mild extent." Given claimant's cumulative impairments, Gorksi opined that claimant had an overall 33% disability. As to claimant's functional abilities and limitations, Gorski found that, although claimant should avoid repetitive use of her arms and excessive walking, standing, kneeling and climbing, she is capable of full-time sedentary work.
Concerning mitigating nonmedical vocational factors, the Board recognized that, although claimant is of a young age and possesses a collegiate certification, her functional limitations would prevent her from returning to the same employment. Even assuming, as claimant contends, that her vocational skills as a surgical technician are specialized and not transferrable, the Board properly identified other skills and mitigating factors, including that claimant had computer skills and could read, write and speak English and that she has five years of experience working as a secretary. The Board also considered the mitigating fact that claimant remained in her prior employments for extended periods of time. The Board's determination reflects that it weighed the proper medical and nonmedical inputs when it assessed claimant's loss of wage-earning capacity, and, deferring to the Board's credibility assessments, we find that substantial evidence supports its determination that claimant sustained a 45% loss of wage-[*3]earning capacity (see Matter of Lesane v City of New York Police Dept., 153 AD3d 1112, 1113 [2017]; Matter of Villalobos v RNC Indus. LLC, 151 AD3d 1156, 1158-1159 [2017]; Matter of Maddox v Baumann Sons Buses, 144 AD3d 1373, 1374 [2016]).
Garry, P.J., Mulvey, Rumsey and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: The employer conceded that claimant sustained a 45% loss of wage-earning capacity.

Footnote 2: Neither claimant nor the employer included any citations to the nonconsecutively paginated original record in support of their arguments set forth in their respective briefs. Moreover, although claimant submitted an appendix, claimant failed to include any citations in her brief to that appendix. We remind the parties that they are required to include appropriate citations and references to the record (see CPLR 5528 [a] [3]; see also CPLR 5529).

Footnote 3: Gorski found that claimant's pathology in her right wrist had resolved itself and assessed a 0% schedule loss of use for that site.